**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**JAMES T. KETCHUCK,**

                    **Plaintiff,**

    v.                                                    **3:11-CV-424**

**DAVID FERRIS and**
**W.T. MOULTON,**

                    **Defendants.**
_____

**THOMAS J. McAVOY,**
**Senior United States District Judge**


**DECISION & ORDER**

**I.    INTRODUCTION**

Plaintiff JAMES T. KETCHUCK commenced this action *pro se* asserting claims of false arrest, malicious prosecution, and abuse of process pursuant to 42 U.S.C. § 1983. See Compl., dkt. # 1. Defendants DAVID FERRIS and W.T. MOULTON move for summary judgment seeking to dismiss Plaintiff's Complaint in its entirety. Dkt. # 21. Plaintiff was granted an extension of time to submit opposition to the motion, dkt. # 23, but has failed to do so in the time allocated by the Court. The Court will decide the motion based on Defendants' papers.

**II.    STANDARD OF REVIEW**

On a motion for summary judgment the Court must construe the properly disputed facts in the light most favorable to the non-moving party, see Scott v. Harris, 127 S. Ct.

1769, 1776 (2007), and may grant summary judgment only where "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see O'Hara v. National Union Fire Ins. Co. of Pittsburgh, PA, 642 F.3d 110, 116 (2d Cir. 2011)("Summary judgment is appropriate only if, after drawing all permissible factual inferences in favor of the non-moving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.")(citing Anemone v. Metro. Transp. Auth., 629 F.3d 97, 113 (2d Cir. 2011)).  Even though the instant motion is unopposed, the Court may not grant summary judgment unless it determines that the moving party is entitled to judgment as a matter of law.  Vermont Teddy Bear Co. v. 1-800 Beargram Co., 373 F.3d 241, 242 (2d Cir. 2004); see also D.H. Blair & Co., Inc. v. Gottdiener, 462 F.3d 95, 110 (2d Cir. 2006) ("Even unopposed motions for summary judgment must fail where the undisputed facts fail to show that the moving party is entitled to judgment as a matter of law.") (Internal quotation marks omitted).

**III.    BACKGROUND**

Due to Plaintiff's failure to file proper opposition to the pending motion despite being served with the motion papers and the Northern District's "NOTIFICATION OF THE CONSEQUENCES OF FAILING TO RESPOND TO A SUMMARY JUDGMENT MOTION," see dkt. # 21-1, the supported factual allegations in Defendants' papers are deemed admitted for purposes of this motion. See Fed. R. Civ. P. 56(e)(2); N.D.N.Y. L.R. 7.1(a)(3); see also Faretta v. California, 95 S. Ct. 2525, 2541 n. 46 (1975)("The right of self-representation is not a license . . . not to comply with relevant rules of procedural and substantive law."); Edwards v. INS, 59 F.3d 5, 8 (2nd Cir. 1995)("While a *pro se* litigant's pleadings must be construed

liberally, . . . *pro se* litigants generally are required to inform themselves regarding procedural rules and to comply with them."). N.Y. Teamsters Conference Pension & Ret. Fund v. Express Servs., Inc., 426 F.3d 640, 648-49 (2d Cir. 2005)(upholding grant of summary judgment where "[t]he district court, applying Rule 7.1(a)(3) strictly, reasonably deemed [movant's] statement of facts to be admitted" because the non-movant submitted a responsive Rule 7.1(a)(3) statement that "offered mostly conclusory denials of [movant's] factual assertions and failed to include any record citations."); Gubitosi v. Kapica, 154 F.3d 30, 31 n. 1 (2d Cir. 1998)(per curiam)(accepting as true material facts contained in unopposed local rule statement of material facts). These facts are as follows.

This case arises in the vortex of a long-standing property dispute between Plaintiff and several others, including the Town of Owego, New York ("the Town") over an easement that runs over a portion of Plaintiff's property in the Town. See Ketchuck v. Town of Owego, 72 A.D.3d 1173, 1173, 897 N.Y.S.2d 759, 760 (3rd Dept. 2010). The easement is now Cafferty Lane, a public roadway that terminates with a "turnaround" at the end of the lane. Id. The Town is responsible for maintaining this roadway, and the roadway is used by the public including a school bus that drives up the road to pick up students and then returns down the roadway after utilizing the turnaround.

Defendant Ferris was, at times relevant to this action, the Town's Superintendent of Highways. On October 20, 2007, Ferris received a call from one of Plaintiff's neighbors. The neighbor told Ferris that Plaintiff was digging a ditch in the gravel portion of the roadway at the end of Cafferty Lane and that it looked like a safety hazard. Ferris went to the end of Cafferty Lane and saw Plaintiff there with a tractor in the middle of the turnaround. The ditch was approximately a foot to a foot and a half deep and a foot and a

3

half to two feet wide. The walls of the ditch were vertical. The ditch was dug on the north side of the roadway at the end of Cafferty Lane, which is where the turnaround is located. The ditch was dug into the graveled portion of the roadway. Plaintiff admitted that he dug the ditch. Ferris believed that the location of the ditch created a safety hazard to the traveling public using the turnaround on Cafferty Lane. Ferris estimated that it would cost the Town over $500.00 to fix the damage to the roadway caused by the ditch. Ferris also believed that a prior New York state court ruling had given the public the right to use the roadway and the Town the right to maintain the roadway for the traveling public. When Plaintiff refused to make the necessary repairs to the roadway, Ferris called law enforcement and reported the situation. Around this time, Ferris was also advised that a school bus driver had complained about the ditch because it made it difficult for the driver to turn the bus around, and Ferris met with representatives of the school district to discuss the dangers associated with the ditch and possible solutions.[1]

Defendant Moulton, an Investigator with the Tioga County Sheriff's Department, was dispatched to the end of Cafferty Lane on October 22, 2007. Moulton had personally used the roadway to turn around on several occasions before he was dispatched to the scene. Ferris told Moulton that the ditch was dug by Plaintiff, that the ditch was a hazard, and that it would cost the Town approximately $500.00 to fix the damage. Ferris did not allege that he actually saw Plaintiff digging the ditch but informed Moulton that one of Plaintiff's neighbors saw who dug the ditch. Moulton took pictures of the ditch and roadway as part of his investigation. The pictures show a ditch dug into the graveled

---

[1] Ferris attests "'[e]ventually, the Town's Highway Department filled in the ditch, only to have the Plaintiff dig another ditch in almost the same area." Ferris Aff. ¶ 24.

portion of the roadway.

After speaking with Ferris, Moulton interviewed Plaintiff's neighbors Carol Smith and Patricia Barber. Both Smith and Barber stated that Plaintiff dug the ditch into the roadway. Moulton then had Ferris, Smith, and Barber sign witness statements reflecting their statements to him. The witness statements from Barber and Smith alleged that it was Plaintiff who dug the ditch into the roadway. The witness statement from Ferris alleged that the damage to the roadway was in excess of $500.00, and that the Town was the "owner/operator/tenant of the property, more particularly described as a Cafferty Lane Roadway." After Ferris signed his witness statement, he had no further involvement in the criminal proceedings against Plaintiff.

Moulton asserts that he had no reason to believe that the statements by Ferris, Smith, or Barber were false. Moulton had spoken with Barber and Smith separately, and he had no reason to believe that their statements were untruthful because each of them seemed certain that it was Plaintiff who dug the ditch and that the ditch was in the roadway. He also observed that there were no signs indicating that the roadway was a private road; that the graveled roadway where the ditch had been dug appeared to be an extension of Cafferty Lane, which upon his information and belief was a public road; and that the ditch was dug several yards in front of signs claiming that the land on the other side of the signs was Plaintiff's "private property." Moulton asserts that it appeared to him that the ditch was dug into the graveled portion of the road where cars would veer to the right when turning around. Also, although Moulton had not previously had interactions with Ferris, he knew that Ferris was the Town's Superintendent of Highways. Therefore, he believed that Ferris would know if the Town had a right to use and maintain the portion

5

of the roadway where the ditch was dug.

After Moulton completed his investigation, he prepared a felony complaint with witness statements against Plaintiff and submitted it to the Town Court of Owego. Moulton asserts that he based his felony complaint on the criminal mischief statute and the three signed witness statements. Plaintiff was not taken into custody by Moulton, and was not at the scene or otherwise detained during Moulton's investigation. The felony complaint requested that the Town Court issue a criminal summons or arrest warrant for Plaintiff. Moulton asserts that he submitted the felony complaint because the facts of the case met the elements of a felony criminal mischief and there was no reason for him to disbelieve any of the sworn witness statements. Therefore, Moulton believed that there was probable cause that the Plaintiff had committed criminal mischief and he asserts he had no ulterior motive for filing the complaint. At the time he investigated this matter and submitted his felony complaint, Moulton was not aware that Plaintiff had previously sued the Town and Ferris over the use of the easement that was now Cafferty Lane.

Owego Town Court Justice Hon. Ronald G. Bell issued Plaintiff a criminal summons requiring him to appear in Town Court. After Plaintiff appeared, Justice Bell issued Plaintiff a notice to appear for fingerprinting and photographing. Plaintiff's defense to the criminal mischief charge was that he owned the property where the roadway was located and the ditch dug, so he could not be guilty of causing damage to the Town's property.

The Tioga County Assistant District Attorney ("ADA") assigned to the matter opined that based on the photographic evidence and statements, there was probable cause to believe that the Plaintiff had committed criminal mischief. However, based on Plaintiff's criminal attorney's statement that Plaintiff's defense would be that the ditch was not dug

6

on Town property, the ADA contacted the Town of Owego Attorney to determine the Town's position regarding the Town's right to use and maintain the roadway. The ADA was told that the Town had been sued by Plaintiff previously over the use of Cafferty Lane and that a decision had been made by the Hon. Jeffrey A. Tait, Justice of the New York State Supreme Court, Tioga County, on October 13, 2006 holding that the public had a right to use the roadway and that the Town had the right to maintain it, including the turnaround.[2]

It appeared to the ADA that Plaintiff wanted to relitigate the same issue already argued in civil court. The District Attorney's Office was advised that Judge Tait's Decision regarding the Town's right to use the roadway was on appeal by Plaintiff, and that it was unknown when the appeal would be heard or a decision issued.[3] The District Attorney's Office believed it would be an inefficient use of its resources to relitigate the Town's right to use the roadway in a criminal case when there would be a decision by the Appellate Division that would solidify the issue for the Town in the future.[4] Rather, the District Attorney's Office opined that justice would be best served by dismissing the case in the interest of justice because the Town was already in the process of litigating its right to use and maintain the roadway in civil court, and that the civil court would be a better venue for the Town to seek redress. Consequently, the ADA moved to dismiss the case against

---

[2] The Hon. Jeffrey A. Tait found that the turnaround at the end of Cafferty Lane was part of the public roadway, that the public was free to use the roadway as it would any other Town road, and that the Town had a right to maintain the roadway. The Plaintiff's claim that the Town's use of the expanded portions of the roadway onto his property constituted a *de facto* taking was dismissed as untimely.

[3] There was no stay of Judge Tait's decision during the pendency of the appeal.

[4] The Appellate Division ultimately upheld the Supreme Court's decision. See Ketchuck v. Town of Owego, 72 A.D.3d 1173, 1173, 897 N.Y.S.2d 759, 760 (3rd Dept. 2010).

7

Plaintiff in the interest of justice, and the motion was granted by the Town Court.  The ADA asserts that she did not seek dismissal of the case because she believed that Plaintiff was innocent of the charge of criminal mischief.  The ADA never contacted Ferris or Moulton to appear in court or to help with the prosecution of Plaintiff.

## IV.     DISCUSSION

### a.  False Arrest Claim against Moulton

Plaintiff asserts that "Defendants David Ferris and W.T. Moulton, acting under color of law, falsely arrested Plaintiff . . . in violation of his rights guaranteed by . . . the U.S. Constitution." Compl. ¶ 5.  The claim is brought pursuant to 42 U.S.C. § 1983.  Id. ¶¶ 4, 5.  The Court will first address the false arrest claim against Defendant Moulton.

A § 1983 claim for false arrest is based on the Fourth Amendment right of an individual to be free from unreasonable seizures. See Weyant v. Okst, 101 F.3d 845, 852 (2d Cir.1996).  Such a claim requires Plaintiff to show (1) that the defendant intended to confine the plaintiff; (2) that the plaintiff was conscious of the confinement; (3) that the plaintiff did not consent to the confinement; and (4) that the confinement was not otherwise privileged. Savino v. City of New York, 331 F.3d 63, 75 (2d Cir. 2003).

A false arrest claim under §1983 will fail if, at the time of the seizure, the arresting officer had probable cause to make an arrest. Jocks v. Tavernier, 316 F.3d 128, 135 (2d Cir. 2003); Weyant v. Okst, 101 F.3d at 852; see Jaegly v. Couch, 439 F.3d 149, 152 (2d Cir. 2006).  Whether probable cause exists depends upon the conclusions drawn from the facts known to the arresting officer at the time of the arrest; the eventual disposition of the criminal charges is not relevant to the inquiry. See Devenpeck v. Alford, 125 S. Ct. 588,

593 (2004)(citing Maryland v. Pringle, 540 U.S. 366, 371 (2003)); Hahn v. County of Otsego, 820 F. Supp. 54, 55 (N.D.N.Y. 1993), aff'd, 52 F.3d 310 (2d Cir. 1995).

Probable cause to arrest exists when: 1) the officers have knowledge or reasonably trustworthy information of the facts and circumstances; and 2) this information is sufficient to warrant a person of reasonable caution to believe the person to be arrested has committed or is committing a crime. See Amore v. Novarro, 624 F.3d 522, 536 (2d Cir. 2010); Weyant, 101 F.3d at 852. A probable cause determination does not require proof beyond a reasonable doubt; rather, the Fourth Amendment is satisfied if there is a mere probability of criminal activity based on the totality of the circumstances. See Hahn, 820 F. Supp. at 58 (citing Pierson v. Ray, 386 U.S. 547, 555 (1967)). Absent some objective indication that witnesses's statements are false, police officers may rely upon those statements to determine whether probable cause probable cause exists regardless of the ultimate accurateness or truthfulness of the statements. See Hotaling v. LaPlante, 167 F. Supp. 2d 517, 521 (N.D.N.Y. 2001). Once a police officer has probable cause, he need not explore "every theoretically plausible claim of innocence before making an arrest." Ricciuti v. New York City Transit Authority, 124 F.3d 123, 128 (2d Cir. 1997); see Coons v. Casabella, 284 F.3d 437, 441 (2d Cir. 2002). Where the facts surrounding the arrest are uncontroverted, the determination as to whether probable cause existed may be made by the court as a matter of law. Weyant, 101 F.3d at 852.

Plaintiff asserts that Defendants wrongfully initiated his arrest for criminal mischief. Compl. ¶¶ 4, 5. However, the facts establish that Defendant Moulton had probable cause

to charge the Plaintiff with criminal mischief under New York Penal Law § 145.05.[5] First, Defendant Moulton had reasonably trustworthy information indicating that Plaintiff dug a ditch in a portion of a public roadway causing approximately $500 in damage. Eyewitnesses Smith and Barber told Moulton that Plaintiff dug the ditch in question, and that the ditch was dug into the roadway. Ferris, the Town's Superintendent of Highways, told Moulton that the ditch damaged the roadway on Cafferty Lane, and it would cost the Town over $500.00 to fix the damage. Second, these statements were confirmed by Moulton's observations at the scene, and were sufficient to warrant a person of reasonable caution to believe the person being charged committed a crime. In this regard, Moulton observed there were no signs indicating the portion of the roadway where the ditch was dug was on private property. The graveled turnaround appeared to be an extension of Cafferty Lane, which, upon Moulton's information and belief, was part of a public road. His belief was corroborated by Ferris' statement that the roadway was open to the public and that the Town maintained it. Based on these statements of the witnesses, and Moulton's own observations at the scene, Moulton had probable cause to believe Plaintiff committed criminal mischief by damaging the roadway.

Even assuming, *arguendo*, that actual probable cause did not exist, arguable probable cause existed, entitling Defendant Moulton to qualified immunity. See Walczyk v. Rio, 496 F.3d 139, 163 (2d Cir. 2007). Arguable probable cause exists if: 1) it was

---

[5] Section 145.05 of the New York Penal Law states: " a person is guilty of criminal mischief in the third degree when, with intent to damage property of another person, and having no right to do so nor any reasonable ground to believe that he or she has such right, he or she: damages property of another person in an amount exceeding two hundred fifty dollars."

10

objectively reasonable for the officer to believe probable cause existed, or 2) officers of reasonable competence could disagree on whether the probable cause test was met. See Amore, 624 F.3d at 536.  To determine whether an officer had arguable probable cause, courts examine the objective information the officer possessed at the time of the arrest, not his "subjective intent, motives, or beliefs."  Id.  It was objectively reasonable for Moulton to believe that probable cause existed to charge Plaintiff with criminal mischief based on Ferris, Smith, and Barber's sworn statements and upon Moulton's own observations.  Accordingly, Defendant is entitled to qualified immunity regarding Plaintiff's false arrest claim.

For the foregoing reasons, the false arrest claim against Defendant Moulton fails as a matter of law and is dismissed.

### b.  False Arrest Claims Against Ferris

Plaintiff also contends that Defendant Ferris falsely arrested him. Compl. ¶¶ 4, 5. As indicated above, the claim is brought pursuant to § 1983. Id.  In order to state a valid claim under Section 1983, "a plaintiff must show (a) that the defendant is a person acting under the color of state law, and (b) that the defendant caused the plaintiff to be deprived of a federal right."  Back v. Hastings on Hudson Union Free Sch. Dist., 365 F.3d 107, 122 (2d Cir. 2004) (citation omitted) (internal quotation marks omitted).

Assuming *arguendo* that Ferris acted under color of state law in calling the police and filing his witness statement, see Polk County v. Dodson, 454 U.S. 312, 317-18 (1981)("[A] person acts under color of state law only when exercising power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the

11

authority of state law."),[6] he committed no constitutional violation because probable cause existed to believe that Plaintiff committed a crime by damaging the public roadway. These facts include Ferris's observation of Plaintiff with a tractor near a ditch in the turnaround at the end of Cafferty Lane; Plaintiff's admission to Ferris that he dug the ditch; two neighbors' statements that Plaintiff dug the ditch in the Town roadway; Investigator Moulton's observation and pictures showing that the ditch was dug in the gravel roadway and outside the area posted by Plaintiff as his private property; and Ferris's knowledge of the State Supreme Court's decision that the Town controlled and had the right to maintain the roadway, including the turnaround.[7] The existence of probable cause defeats the § 1983 false arrest claim against Ferris.

Even construing Plaintiff's Complaint to assert a New York State common law claim of false arrest/false imprisonment against Ferris, the claim still fails. Under New York law, the elements of false arrest/false imprisonment are the same as for a §1983 false arrest claim. See Curry v. City of Syracuse, 316 F.3d 324, 335 (2d Cir. 2003).[8] The facts providing a legal justification for Plaintiff's arrest, thus making his resulting deprivation of liberty privileged.

Moreover,

[a] civilian complainant will generally not be liable for false arrest/false imprisonment merely for seeking the assistance of or furnishing information

---

[6] A proposition the Court does not necessarily adopt.

[7] The bus driver's complaint that the ditch was in the turnaround area used by the bus provides further indication that the ditch was in the portion of the roadway used by the public, but it is unclear from the facts whether Ferris was aware of this complaint at the time he signed his witness statement.

[8] ((1) the defendant intended to confine [the plaintiff]; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement; and (4) the confinement was not otherwise privileged).

12

> to law enforcement authorities, who are then free to exercise their own judgment concerning whether an arrest should be made and criminal charges filed. Nor does identifying the plaintiff as the perpetrator of a crime necessarily give rise to tort liability. To sustain a cause of action for false arrest and false imprisonment against a civilian complainant, a plaintiff must show that the defendant took an active role in the arrest of the plaintiff, such as giving advice and encouragement or importuning the authorities to act, and that the defendant intended to confine the plaintiff. Thus, one who instigates, causes or directs an arrest without a warrant is liable if it results in false imprisonment because no crime has been committed or the person arrested is innocent.

Lowmack v. Eckerd Corp., 303 A.D.2d 998, 999, 757 N.Y.S.2d 406 (4th Dept. 2003)(interior citations, quotation marks, and brackets omitted).

There is no evidence that Ferris gave advice or encouragement to Investigator Moulton to cause Plaintiff's arrest. Instead, the evidence indicates that Ferris merely reported the facts as he believed them to be. As indicated above, the facts surrounding this situation support the conclusion that probable cause existed to believe that Plaintiff committed criminal mischief, thereby negating an inference that Ferris sought to confine Plaintiff by filing a bogus criminal charge.

For these reasons, the false arrest/false imprisonment claim against Defendant Ferris, whether brought pursuant to 42 U.S.C. § 1983 or New York State common law, is dismissed.

**c. Malicious Prosecution Claim - Investigator Moulton**

Plaintiff also brings a malicious prosecution claim against both defendants. To satisfy a § 1983 claim for malicious prosecution, Plaintiff must demonstrate the defendant's conduct is tortious under state law and results in a constitutionally cognizable depravation of liberty. See Kinzer v. Jackson, 316 F.3d 139, 143 (2d Cir. 2003). A malicious prosecution claim in New York requires Plaintiff to show: 1) the defendant

13

commenced or continued a criminal proceeding against him; 2) the proceeding was terminated in Plaintiff's favor; 3) no probable cause existed for the proceeding; and 4) the defendant instituted the proceeding with malice. See id.  On a § 1983 malicious prosecution claim, Plaintiff must also prove a fifth element, which is "a sufficient post-arraignment liberty restraint to implicate the plaintiff's Fourth Amendment rights." Rohman v. NYC Transit Authority, 215 F.3d 208, 215 (2d Cir. 2000); see also Singer v. Fulton County Sheriff, 63 F.3d 110, 116 (2d Cir.1995) ("A plaintiff asserting a Fourth Amendment malicious prosecution claim under § 1983 must ... show some deprivation of liberty consistent with the concept of 'seizure.'").

Probable cause to believe that the proceeding could succeed is a complete defense to a malicious prosecution claim. See Rohman, 215 F.3d at 215.  For the reasons discussed above, Investigator Moulton had probable cause to believe Plaintiff committed the criminal mischief offense for which he was charged. Therefore, Plaintiff cannot prevail on a malicious prosecution claim against Defendant Moulton.

Moreover, to state a claim for malicious prosecution under either § 1983 or New York state common law, Plaintiff must establish, *inter alia*, "termination of the proceeding in [the accused's] favor." Green v. Mattingly, 585 F.3d 97, 104 (2d Cir. 2009).  Whether termination is deemed favorable to the accused is determined in accordance with applicable state law, here, New York law.  Hygh v. Jacobs, 961 F.2d 359, 367 (2d Cir.1992).  Proceedings are "terminated in favor of the accused" when their final disposition is such as to indicate the accused is not guilty.  DiBlasio v. City of New York, 102 F.3d 654, 657 (2d Cir.1996).  "Where a prosecution did not result in an acquittal, it is generally not deemed to have ended in favor of the accused, for purposes of a malicious

14

prosecution claim, unless its final disposition is such as to indicate the accused's innocence." Fulton v. Robinson, 289 F.3d 188, 196 (2d Cir. 2002). A dismissal "in the interest of justice" under New York Criminal Procedure Law § 170.40 "cannot provide the favorable termination required as the basis for a claim of malicious prosecution." Hygh, 961 F.2d at 368 (citing Ryan v. N.Y. Tel. Co., 62 N.Y.2d 494, 478 N.Y.S.2d 823, 467 N.E.2d 487, 493 (1984)). Thus, Plaintiff cannot establish the "favorable termination" element of his malicious prosecution claim.

Further, there are no facts from which a reasonable fact finder could conclude that Investigator Moulton instituted the underlying proceeding with malicious intent. He attested that he prepared the felony complaint against Plaintiff only because of his good faith belief there was probable cause to pursue such charge. See Moulton Aff. ¶ 25. There are no facts from which a reasonable fact finder could conclude that Investigator Moulton instituted the underlying proceeding with a malicious motive or intent such to state a viable malicious prosecution claim. See Manganiello v. City of New York, 612 F.3d 149, 161 (2d Cir. 2010)(to prevail on a malicious prosecution claim, a plaintiff must establish, *inter alia*, that the proceeding was begun with malice); Lowth v. Town of Cheektowaga, 82 F.3d 563, 573 (2d Cir. 1996)(malice may be proven by showing that the prosecutor had "a wrong or improper motive, something other than a desire to see the ends of justice served")(internal quotation marks omitted).

Finally, for the reason discussed above with regard to Investigator Moulton's entitlement to qualified immunity on the false arrest charge, he is also entitled to qualified immunity on the malicious prosecution claim. That is, under the circumstances it was objectively reasonable for officers to believe that there was probable cause to commence

15

the prosecution for the offense charged.   Accordingly, the malicious prosecution claim against Defendant Moulton is dismissed.

### d.  Malicious Prosecution Claim - Ferris

Plaintiff also cannot establish a claim of malicious prosecution against Defendant Ferris.  First, Plaintiff cannot establish that Ferris commenced or continued the criminal proceeding against Plaintiff.  Ferris merely supplied Investigator Moulton with information in the form of a witness statement.  Ferris Aff. ¶ 25. This conduct alone is insufficient to satisfy the "commenced a criminal proceeding" element. See Watkins, 82 A.3d at 1572.

Second, for the reasons discussed above, and assuming it could be concluded that Ferris commenced the criminal action, there was probable cause to do so.  And third, as also discussed above, Plaintiff cannot establish the "favorable termination" element of his malicious prosecution claim.

Therefore, the malicious prosecution claim against Defendant Ferris is dismissed.

### d.  Abuse of Process

Plaintiff's last claim against Defendants Ferris and Moulton is for abuse of process. "In the criminal context, malicious abuse of process is by definition a denial of procedural due process. . . . Procedural due process forbids the use of legal process for a wrongful purpose."  Abreu v. Romero, 2010 WL 4615879, at *8 (S.D.N.Y.  Nov. 9, 2010)(citation omitted).  To state a claim for malicious abuse of process, Plaintiff must prove Defendant: 1) employed regularly issued legal process to compel performance or forbearance of some act; 2) with intent to do harm without excuse or justification; 3) to obtain a collateral objective outside the legitimate ends of the process. See Devarnne v. City of Schenectady, 2011 WL 219722, at *3 (N.D.N.Y. Jan. 21, 2011) (citing Savino v. City of

16

New York, 331 F.3d 63, 76 (2d Cir. 2003)). "The pursuit of a collateral objective must occur after the process is issued; the mere act of issuing process does not give rise to a claim." Lopez v. City of New York, 901 F. Supp. 684, 691 (S.D.N.Y.1995) (citing PSI Metals v. Firemen's Ins. Co., 839 F.2d 42, 43 (2d Cir.1988)). In other words, Plaintiff "must claim that [Defendants] aimed to achieve a collateral purpose beyond or in addition to his criminal prosecution." Savino, 331 F.3d at 77. "In New York, such wrongful purposes have included economic harm, extortion, blackmail, and retribution." Abreu, 2010 WL 4615879, at *8 (citing Bd. of Educ. of Farmingdale Union Free Sch. Dist. v. Farmingdale Classroom Teachers Ass'n, 38 N.Y.2d 397, 404 (1975)).

Plaintiff's malicious abuse of process claim fails as the facts are devoid of any allegations concerning any "collateral objective" that Defendants may have had in instituting criminal charges against Plaintiff. There is no factual basis upon which a reasonable fact finder could conclude that the filing of a criminal complaint against Plaintiff was motivated by anything other than Investigator Moulton's good-faith belief that he had probable cause to conclude that Plaintiff had engaged in conduct constituting criminal mischief. Furthermore, there is no evidence that either defendant had any involvement in the prosecution of the case against Plaintiff after Investigator Moulton filed the criminal complaint and Town Justice Bell issued a criminal summons to Plaintiff. Under these uncontested facts, the claim fails as a matter of law.

Finally, and assuming *arguendo* that a viable § 1983 abuse of process claim is stated, Investigator Moulton is entitled to qualified immunity on the claim in that there existed, at the least, arguable probable cause to commence the criminal proceeding. This arguable probable cause provides an objectively reasonable justification for issuing

process commencing the underlying proceeding. Cf. Abreu, 2010 WL 4615879, at *8 ("While probable cause is not an element of an abuse of process claim, under New York law, a showing of probable cause at the time process issued suffices . . . to establish excuse or justification for the purposes of a defense to abuse of process.")(internal quotation marks and citation omitted).   Accordingly, the abuse of process claim is dismissed as to both defendants.

## V.    CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment [dkt. # 21] is **GRANTED**, and all the claims herein are **DISMISSED**.

**IT IS SO ORDERED**

**Dated:** June 19, 2012


_____
Thomas J. McAvoy
Senior, U.S. District Judge